491 P.2d 439

J. Fred TALLEY, Real Estate Commission-
er of the State of Arizona; State Real
Estate Department of the State of Ari-
zona, Appellants,

v.

PARADISE MEMORIAL GARDENS, INC.,
a proposed Arizona corporation, et
al., Appellees.

No. 10320.

Supreme Court of Arizona,
In Division.

Dec. 9, 1971.

Gary K. Nelson, Atty. Gen., James W.
Woodcock, Asst. Atty. Gen., Phoenix, for
appellants.

Beer & Kalyna, by Paul Beer, Carson,
Messinger, Elliott, Laughlin & Ragan by
Philip W. Messinger, Phoenix, for appel-
lees.

LOCKWOOD, Justice:

This case comes before us under the pro-
visions of A.R.S. § 12–913, providing for
appeal from review of an administrative
decision. The questions raised are the
proper scope of review under the Adminis-
trative Review Act (A.R.S. § 12–901 et
seq.) and whether the Regulation of Ceme-
teries Act (A.R.S. § 32–2194 et seq.) is un-
constitutional. Appellants are J. Fred Tal-
ley, Real Estate Commissioner and the
State Real Estate Department, referred to
here as the Department, and appellees are
Paradise Memorial Gardens, Inc., a pro-
posed Arizona corporation; Messinger
Mortuary & Chapel, Inc., an Arizona cor-
poration; Hansen Mortuary, an Arizona
corporation; Ralph L. Sage; Larry J.
Melcher; A. Lee Moore, Jr.; Guy Still-
man; George F. Getz, Jr.; Donald J. Dia-
mond; Neilson Brown; and Clarence A.
Calhoun, referred to here as applicants or
Paradise Gardens.

Briefly, the facts are as follows. Para-
dise Memorial Gardens, Inc., is a proposed
Arizona corporation organized for the pur-
pose of operating a perpetual care ceme-
tery. The incorporators own eighty acres
in Paradise Valley, which they plan to de-
velop as a cemetery. They presently pro-
pose to develop twelve acres, reserving the
remainder for future development. The
developers are funeral home directors in

the cities of Phoenix and Scottsdale and a few private investors.

In 1964, Paradise Gardens obtained zoning permission from the City of Scottsdale for the proposed cemetery.[1] The zoning permit as granted was contingent upon Paradise Gardens obtaining a Certificate of Authority from the State Real Estate Department within one year. In 1965, the zoning permit was extended to give Paradise Gardens additional time to make its application before the State Real Estate Department. When the Comprehensive General Plan of Scottsdale was adopted the next year, the proposed cemetery site was confirmed.[2]

In 1968, Paradise Gardens, after finalization of its plans, applied to the State Real Estate Department for a Certificate of Authority to operate a cemetery pursuant to A.R.S. § 32–2194 et seq. After a hearing the State Real Estate Commissioner denied the certificate on the grounds that the area was adequately served. Paradise Gardens appealed to the Superior Court under the Administrative Review Act. The Superior Court reversed the determination of the Real Estate Commissioner, and the latter appealed.

At the administrative hearing Green Acres Memorial Gardens, Inc., a competitor of the proposed cemetery, and North Scottsdale Homeowners' Association, Inc., appeared in opposition to Paradise Gardens' application. Their chief witness was Walter Winius, Jr., a real estate appraiser and consultant who had been employed by Green Acres several years earlier to make a study of available cemetery space in Maricopa County. His testimony was largely based upon that survey, which was introduced in evidence. The theory of Green Acres and North Scottsdale Homeowners was that there was no need for the proposed cemetery. Their contention at all stages of the proceedings was that Scottsdale and Paradise Valley are adequately served by Green Acres. The Homeowners Association was additionally concerned about the increase of traffic which would result from the proposed cemetery.

The applicants presented testimony from the incorporators, uninterested funeral directors, ministers, and a representative from the Town Council of Paradise Valley, all appearing in favor of the proposed cemetery, and testifying to the need for the cemetery. Applicants' expert witness was Charles Blom, Past President of the Arizona Interment Association, with a background in real estate development and cemetery development. He and another real estate consultant had done a more recent study than that of Mr. Winius. Blom's testimony dealt with the results of his study. By applying a factor of 4 to the population figures in Mr. Winius' study, Blom's study determined that by 1980, all the uncommitted cemetery spaces would be committed. His conclusion was based both upon the expanding population of the area and a certain percentage rate of pre-need, i. e., before death, sales. Mr. Winius, in his study, merely applied the death rate to the available grave spaces throughout Maricopa County.

At the hearing, a controversy arose as to the proper definition of "the area to be served." The appellees submitted their figures on the basis of a fifteen mile radius, which was required by the Real Estate Department, but contended that the actual area to be served was approximately a seven mile radius, consisting of the natural geographic area of Paradise Valley. The Department used the fifteen mile radius in making its determination of adequate service. Within the seven mile radius, only one cemetery, with 600 available spaces exists. Within the fifteen mile radius,

1. Although the proposed cemetery is located in the geographic area known as Paradise Valley, it is located within the City limits of Scottsdale.

2. Scottsdale's General Plan calls for two cemeteries—Green Acres, one of the appellants, and Paradise Gardens. Green Acres is located to the extreme south of Scottsdale and Paradise Gardens is located to the extreme north.

186,000 available spaces exist.[3] The applicants contend that geographic factors should be taken into consideration in determining the area to be served, and that the area to be served will not always be the fifteen mile radius used by the Department. The record fails to disclose whether the trial court determined that the "area" to be served was the seven mile area used by the applicants, or the fifteen mile area which the Department determined was to be the basis for adequate service.

In the Superior Court, review was had by certified record of the hearing before the Department, and by oral argument and briefs by counsel. The applicants contended first that the Department had abused its discretion in finding that the area was adequately served, and second, that the act was unconstitutional. The Superior Court reversed the determination of the Real Estate Commissioner holding that the evidence on the whole record did not support the Commissioner. The court stated in its minutes that it made no decision as to whether the statute was unconstitutional. The Real Estate Commissioner and the Department appealed from the determination of the Superior Court.

The basic question is whether the trial court properly decided that the Department abused its discretion in determining that the area was adequately served. Although the applicants attempted to attack the statute (§ 32-2194 et seq.), supra, in its complaint as unconstitutional, the trial court refused to pass on the issue and found in favor of applicants on their appeal from the decision of the Commissioner. Applicants filed no cross-appeal, and they are in no position to raise that issue here. See Maricopa County v. Corporation Commission of Arizona, 79 Ariz. 307, 289 P.2d 183 (1955), wherein this Court said:

"[I]f appellee in its brief seeks only to support or defend and uphold the judgment of the lower court from which the opposing party appeals, a cross-appeal is not necessary. [citation omitted] If, however, it is sought by such cross-assignments to attack said judgment with a view either of 'enlarging his own rights thereunder or of lessening the rights of his adversary' he must cross-appeal by conforming with the rules of court by giving notice of appeal." 79 Ariz. at 310, 289 P.2d at 185.

The basic question involves the proper scope of review under our Administrative Review Act. A.R.S. § 12–901 et seq. Our most recent pronouncement on the scope of administrative review is Navajo County v. Four Corners Pipe Line Company, 106 Ariz. 511, 479 P.2d 174 (1970), opinion on rehearing, 107 Ariz. 296, 486 P.2d 778 (1971). Although that case dealt with A.R.S. § 42–147, its provisions for review are similar. We held there that the party seeking review from an administrative determination has the burden of persuasion in the Superior Court, and that there must be competent evidence sufficient to support a finding for a plaintiff's contentions. A.R.S. § 12–911

---

3. According to information submitted by Paradise Gardens, there are seven cemeteries within a fifteen mile radius from the proposed location. They are:

| | | | |
|---|---|---|---|
| 1. | Mesa City Cemetery | 10.5 miles | 8,000 spaces |
| 2. | Double Butte Cemetery | 13.4 miles | 10,000 spaces |
| 3. | Green Acres | 9.1 miles | 72,000 spaces |
| 4. | Deer Valley | 13.3 miles | 72,000 spaces |
| 5. | St. Francis | 9.3 miles | 3,500 adult spaces |
| | | | 600 infant spaces |
| 6. | East Resthaven | 14.2 miles | 20,000 spaces |
| 7. | Camelback Cemetery | 5.0 miles | 600 spaces |

Green Acres is located in south Scottsdale and Camelback Cemetery is located in Paradise Valley. By using the seven mile radius, the only cemetery in "the area to be served" is Camelback Cemetery, with 600 spaces left. These figures were approximate figures in 1968. The mileage figures were by air, not by road, which could conceivably make a difference as to the actual accessibility of the cemetery locations.

permits a wide scope of review. It provides that the trial court's determination shall extend to all questions of law and fact presented by the entire record. It provides for findings of fact, if requested. In effect the trial court's proper scope of review is broadened to include a finding based upon substantial evidence in the record. See Universal Camera v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

The Commissioner has cited several of our Industrial Commission cases which appear to adopt a review standard more limited than that advocated by the appellee. These cases are controlled by specific statutes, and thus are not pertinent.

This court has outlined the proper function of appellate review in Foote v. Gerber, 85 Ariz. 366, 339 P.2d 727 (1959). We held that function was limited to determining whether or not the superior court's decision was clearly erroneous. In that case the parties had requested a trial de novo under the Administrative Review Act. However, judgment was had on the pleadings, and thus is analogous to the situation before us where review was had by certified record and briefs and argument by counsel. Under Foote v. Gerber, supra, the question before us was not whether the record affords a basis, however slight, for the Commissioner's determination, but whether it afforded a basis for that of the Superior Court. We stated:

> "Counsel for appellant Supervisor cites several cases as authority for the proposition that the Supervisor's decision should be given equal dignity with that of a Superior Court decision on an appeal from the latter to this Court. We have examined these cases, and cannot find them applicable.

> "Upon an examination of the entire record before us, including the reporter's transcript of the evidence adduced at the Supervisor's hearing, we find ample evidence to support a finding by the superior court * * *." 85 Ariz. at 372, 339 P.2d at 731.

The actual factual issue here involved was whether the area was already adequately served. The Department held that it was, the Superior Court held it was not.

It will be noted that the statute does not specify the size of the area. This necessarily leaves a considerable discretion in the Real Estate Department.

The State Real Estate Department contended that the legislature gave a clue as to the "area" in another section of the act by basing its requirements for the perpetual care trust fund on the population to be found within a fifteen mile radius. Therefore, the State Real Estate Department contends that the legislature intended the "area to be served" a fifteen mile radius from the applicant cemeteries. We do not agree.

Paradise Gardens introduced evidence which would tend to show that the seven and one-half mile radius was the actual area to be served. It approximates a geographic unit which is separated from the remainder of the valley by mountains. Paradise Gardens also introduced evidence of the traffic problems in getting from funeral homes and churches to the present cemeteries, which would be alleviated by the lack of traffic in the proposed area. There is presently no cemetery which serves the north portion of Scottsdale. The existing cemeteries (within the 15 mile radius) are all to the South or West. Deer Valley, the other northern cemetery, is located in a different geographic area.

The opponents did not present evidence which controverted Paradise Gardens' seven and one-half mile radius as the area to be served. Its expert merely stated that he did not consider convenience in reaching

his conclusions. He considered 15 miles otherwise reasonable.

Paradise Gardens contends that in determining the area to be served, factors of public convenience and accessibility should be considered. It cites Union Pacific v. Public Service Comm., 103 Utah 459, 135 P.2d 915 (1943) and quotes:

> " 'A service is not necessarily adequate because the community * * * can conduct its business without further or additional service * * *. To be adequate they must safeguard the people generally from appreciable inconvenience in the pursuit of their business * * *. If a new or enlarged service will enhance the public welfare, increase its opportunities, or stimulate its economic, social, intellectual or spiritual life to the extent that the patronage received will justify the expense of rendering it, the old service is not adequate." Union Pacific v. Public Service Comm., 103 Utah at 465, 135 P.2d at 917.

We hold that the area to be served is a flexible matter left by the legislature to the discrimination of the Department. Although there is nothing inherently wrong in requesting figures for a 15 mile radius for purposes of the initial application, the 15 mile figure will not be conclusive. In the instant case the applicant, stressing the convenience factor, has requested a different area from the 15 mile radius. The evidence to support the Real Estate Department consists of its initial requirement of figures for the 15 mile radius, and the opinion of Walter Winius that 15 miles is reasonable. Because Mr. Winius failed to consider the convenience factor the trial court was justified in determining this evidence was not sufficient.

Judgment affirmed.

STRUCKMEYER, C. J., and CAMERON, J., concur.