273 N.J. Super. 421 (1994)
642 A.2d 415
MT. BETHEL HUMUS COMPANY, INC., PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION AND ENERGY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 5, 1994.
Decided May 24, 1994.
*423 Before Judges BRODY, STERN and KEEFE.
Henry N. Christensen Jr. argued the cause for appellant (Samuel D. Bornstein, attorney).
Rachel Horowitz, Deputy Attorney General, attorney for respondent (Deborah T. Poritz, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Horowitz, on the brief).
The opinion of the court was delivered by KEEFE, J.A.D.
The issue presented on appeal is whether a resolution passed by the Township of Vernon Planning Board (Planning Board) on May 25, 1983 constituted site plan approval under the Municipal Land Use Law (MLUL) so as to exempt plaintiff's operations from the permit requirements of the Freshwater Wetlands Protection Act (FWPA). The Commissioner of the Department of Environmental Protection and Energy (DEPE) determined that Mt. Bethel Humus Company, Inc. (Mt. Bethel) did not qualify for an exemption under the provisions of N.J.S.A. 13:9B-4d of the FWPA. Mt. Bethel appeals from that determination and we affirm.
Mt. Bethel has been actively engaged in harvesting and extracting peat, humus and clay from its land in Vernon Township (Township) since 1965. All parties concede that, by 1975 when the Township passed a Soil Removal ordinance, Mt. Bethel's mining operation had gained the status of a nonconforming use. At that time, Mt. Bethel's property was located in an A-1 residence district where soil removal was permitted only as a special exception use. Regardless of whether a landowner had received a special exception use variance or the protection of nonconforming *424 use status, the Township's Soil Removal ordinance prohibits the removal of soil "for sale or use other than on the premises from which the soil [is] taken" unless a permit had first been issued and the operation was "in accordance with an approved plan."
The permit process requires a two-step procedure. If the applicant has the protection of nonconforming use status (as did Mt. Bethel), the application for a permit must be filed with the Planning Board.[1] The application must be accompanied by a map or maps showing such things as contour lines, the location of all structures, roads, storage areas and details concerning drainage. The ordinance specifically discourages wet mining and specifically prohibits the removal of soil "within eight (8) feet of the water table." The Planning Board's function under the ordinance is to make recommendations to the Township Committee. It is the Township Committee that has the power to either issue or withhold the permit.
In August 1976, the MLUL took effect, and the Township began to conform its land use laws to the MLUL. Specifically, in 1978, the Township amended its site plan review provisions to conform to the provisions of the MLUL in that regard.
Mt. Bethel initially took the position that the Soil Removal ordinance did not apply to Mt. Bethel's preexisting operation. However, Mt. Bethel eventually conceded the applicability of the ordinance and in 1981 applied for a soil removal permit. It specifically sought a waiver from that part of the ordinance prohibiting soil removal from within eight feet of the water table. Apparently, the very nature of humus excavation is that the process occurs at or below the water table. The ordinance permits variances from strict compliance under certain circumstances. Maps or plans as required by the ordinance were submitted for review and approval. The application was erroneously *425 filed with the Board of Adjustment. However, in view of Mt. Bethel's nonconforming use status, the matter was properly referred to the Planning Board.
After hearings on the application, the Planning Board adopted an extensive resolution essentially recommending that the Township Committee issue the soil removal permit to Mt. Bethel subject to enumerated conditions. Thereafter, on July 23, 1984, the Township Committee passed a resolution granting Mt. Bethel a soil removal permit subject to essentially the same enumerated conditions suggested by the Planning Board. The Township Committee agreed with the Planning Board that Mt. Bethel was entitled to a waiver or variance from the provision of the ordinance prohibiting soil removal from within eight feet of the water table because of the peculiar nature of a humus removal operation.
On July 1, 1988 the New Jersey FWPA became effective. On December 6, 1989, DEPE issued a Notice of Violation, with a Cease and Desist Order, to Mt. Bethel. The Notice advised Mt. Bethel that the excavation of soil and the clearing of vegetation was, among other things, a violation of the FWPA. Extensive communications and negotiations were undertaken between Mt. Bethel and DEPE representatives. Ultimately, DEPE advised Mt. Bethel that it could continue to excavate clay from a part of its property that had already been disturbed and did not contain wetlands, but that a permit would be required prior to the disturbance of other areas containing wetlands.
Instead of applying for a wetlands permit, Mt. Bethel applied for a formal letter of exemption from the FWPA. Mt. Bethel claimed in its letter that it was entitled to an exemption on the basis of what it termed "site plan approval" from the Planning Board in 1983. The FWPA exempts from permit and transition area requirements
projects for which (1) preliminary site plan ... applications have received preliminary approvals from the local authorities pursuant to the "Municipal Land Use *426 Law," P.L. 1975, c. 291 (C. 40:55D-1 et seq.) prior to the effective date of this act, ....
[N.J.S.A. 13:9B-4d].
Mt. Bethel's request for an exemption letter was denied.
Thereafter, Mt. Bethel requested an administrative hearing, and the matter was referred to the Office of Administrative Law as a contested case. After conducting a hearing on the matter, the Administrative Law Judge (ALJ) issued a decision in which he found that the 1983 Planning Board resolution related solely to the issuance of a soil removal permit, and did not constitute the approval of a site plan pursuant to MLUL. Thus, he found that Mt. Bethel had failed to establish that it had received preliminary site plan approval for its operation prior to July 1, 1988, the effective date of the FWPA. Neither party filed exceptions to the ALJ's determination. On May 6, 1993, Commissioner Weiner issued a final decision, essentially adopting the ALJ's decision. Mt. Bethel then filed this appeal.
On appeal, Mt. Bethel contends that its soil removal operations in Vernon Township are exempt from the FWPA because it received site plan approval in connection with those operations on May 25, 1983, before the effective date of the FWPA. Specifically, Mt. Bethel contends that "[a]t the time Mt. Bethel received site plan approval, the same was required not by the Soil Removal Ordinance, which is silent as to site plan approval, but by Paragraph 3 of the Ordinance of December 20, 1976, which expressly invoked the authority of the MLUL C.40:55D-67." Mt. Bethel's argument is not supported by the record or applicable law.
Although the words "site plan" are used in the Planning Board's resolution, it is clear from reading the resolution as a whole that the Planning Board clearly understood its jurisdiction was conferred by the Soil Removal ordinance, and that its function was to make a recommendation to the Township Committee with respect to whether a permit should issue. The Planning Board's reference to Mt. Bethel's "site plan" was, in reality, the "map or maps" required to be filed under the Soil Removal ordinance. The Soil Removal ordinance specifically requires the applicant to file "a map or maps" with the application for a permit with a view toward *427 obtaining "an approved plan" as a precondition for receiving the permit. See § 83-3 and 83-6 of the Soil Removal ordinance.
Although Mt. Bethel contends that the Planning Board's action pertaining to site plan approval was required by paragraph three of the zoning ordinance, the paragraph relied upon by Mt. Bethel is titled "Conditional Uses." It provides:
Wherever uses are designated in the zoning ordinance as "special exceptions uses" or "conditional uses," which heretofore have been permitted only after review and approval by the zoning board of adjustment and the township committee, said uses shall hereafter be permitted only after review and approval by the planning board pursuant to the provisions of C. 40:55D-67, except as otherwise provided by C. 40:55D-76.
As noted earlier when Mt. Bethel applied to the Planning Board for a soil removal permit, soil removal operations were identified as special exception uses in the A-1 residential district. A special exception use or conditional use is a form of zoning restriction. That is, the use is permitted in a particular zone only upon proof that certain conditions exist. N.J.S.A. 40:55D-3. In order to obtain a conditional use permit, the applicant must offer proof to show compliance with "clear and ascertainable standards." PRB Enterprises, Inc. v. South Brunswick Planning Bd., 105 N.J. 1, 9, 518 A.2d 1099 (1987).
However, Mt. Bethel was not required to obtain a special exception or conditional use permit. Once a landowner has obtained the status of a preexisting nonconforming use operator with respect to an extractive industry, such as quarrying or soil removal, the operation is protected against subsequent zoning restrictions. The protection of nonconforming use status extends ordinarily to the entire parcel which is the subject of the extractive operation and ordinarily may expand to the boundaries of the property. Moore v. Bridgewater Tp., 69 N.J. Super. 1, 9-20, 173 A.2d 430 (App.Div. 1961); Bernardsville Quarry, Inc. v. Borough of Bernardsville, 129 N.J. 221, 237, 608 A.2d 1377 (1992). However, preexisting nonconforming extractive industries nonetheless may be subject to regulations adopted by municipalities pursuant to the general police power. Moore, supra. Such ordinances are *428 typically enacted in the form of a soil removal ordinance such as the one in question. See, e.g., Doc Watch Hollow Quarry Pit, Inc. v. Warren Tp., 142 N.J. Super. 103, 361 A.2d 12 (App.Div. 1976), aff'd, 74 N.J. 312, 377 A.2d 1201 (1977).
Clearly then Mt. Bethel's appearance before the Planning Board in 1983 was mandated not by the zoning ordinance, as Mt. Bethel contends, but rather by reason of the Soil Removal ordinance. The Planning Board and Township Committee understood that to be the case and, for that reason, there is no reference in the resolutions to either a special exception use or conditional use permit being issued. The only "variance" recommended by the Planning Board was a variance from or waiver of the provisions of § 83-17 of the Soil Removal ordinance which prohibits soil removal within eight feet of the water table. That variance procedure is permitted by § 83.38 of the Soil Removal ordinance, not the zoning ordinance.
Although planning boards have exclusive jurisdiction over reviews of site plans in connection with applications for development, N.J.S.A. 40:55D-38, as well as other matters,[2]N.J.S.A. 40:55D-26b provides that the governing body may by ordinance provide for the reference of any matter or class of matters to the planning board before final action thereon by a municipal body or a municipal officer having final authority. The Township's Soil Removal ordinance in this case specifically authorized the Planning Board to preliminarily act upon all applications for soil removal permits with respect to applicants, such as Mt. Bethel, whose property had achieved nonconforming use status. Thus, the Planning Board's jurisdiction was conferred by N.J.S.A. 40:55D-26b, not by N.J.S.A. 40:55D-38. Because planning boards are creatures of statute, they may only exercise those powers *429 granted by statute. See N.J.S.A. 40:55D-20; Chesterbrooke Ltd. Partnership v. Planning Bd. of Township of Chester, 237 N.J. Super. 118, 567 A.2d 221 (App.Div.), certif. denied, 118 N.J. 234, 570 A.2d 984 (1989). As such, the Planning Board's resolution in 1983 did not result in site plan approval under the MLUL as is required for an exemption from the FWPA.
Affirmed.
NOTES
[1] If the applicant was not operating a nonconforming use but wished to remove soil under conditions regulated by the ordinance, the applicant would first have to obtain a special use permit from the Board of Adjustment.
[2] A planning board is directly authorized to exercise power with regard to the adoption of a master plan; subdivision control; recommendations as to the official map; conditional use application; recommendations as to the zoning ordinance or amendments thereto; and capital improvements program. Cox, New Jersey Zoning and Land Use Administration, § 4-3.1 at 48-49.