957 P.2d 337

Kiersten Sue FRITZ; and Citizens Supporting Fair Growth, a political committee, Plaintiffs–Appellants,

v.

CITY OF KINGMAN, a municipal corporation; Charlene Ware, in her official capacity as City Clerk, Defendants–Appellees,

and

Committee for Responsible Zoning, Intervenor.

No. CV–98–0062–AP.

Supreme Court of Arizona.

April 16, 1998.

Gallagher & Kennedy P.A. by Jeffrey D. Gross, Phoenix, for Plaintiffs–Appellants.

Charlotte Wells, Kingman City Attorney, Kingman, for Defendants–Appellees.

Sacks Tierney P.A. by Andrew de Mars and Brian de Vallance, Phoenix, for Intervenor.

GERBER, Justice.

¶ 1   This appeal raises the single Euclidean [1] question whether a rezoning ordinance adopted by the city of Kingman is a legislative act subject to referendum or, on the other hand, merely an administrative act and hence not referable.   After the trial court

---

1.   See Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303     (1926).

ruled that the rezoning was legislative and therefore referable, the proponent of the rezoning ordinance, Kiersten S. Fritz, appealed directly to this court. For reasons that follow, we reaffirm our view that zoning decisions are legislative matters subject to referendum. We also reaffirm that *Wennerstrom v. City of Mesa,* 169 Ariz. 485, 821 P.2d 146 (1991), neither alters that view nor implies that zoning ordinances reflecting a city's general plan thereby become administrative decisions. We therefore affirm the trial court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 After public hearings and citizen input, the city of Kingman (city) adopted the Kingman General Plan on May 4, 1992. The General Plan land use map showed the Fritz property in an area where densities could range from one to four dwelling units per acre. The existing zoning of Ms. Fritz's land was R–R, which allowed only one dwelling per acre.

%¶ 3 In 1997, some five years after adoption of the General Plan and in response to Ms. Fritz's request, the city adopted a zoning ordinance that changed the classification of her land to R–1–8, which permitted as many as four dwellings per acre. A citizens group opposed to the rezoning, the Committee for Responsible Zoning (Committee), filed petitions with the city to refer the rezoning to the electorate.

¶ 4 Fritz and a contending group named Citizens Supporting Fair Growth (collectively Fritz) then filed suit in the superior court to compel the city to reject the referendum petitions. The trial court allowed the Committee to intervene. Fritz moved for summary judgment on the ground that the rezoning ordinance was an administrative act not subject to referendum. The trial court denied the motion and granted the Committee's countermotion for summary judgment, effectively holding that the rezoning constituted a legislative act subject to referendum.

¶ 5 Fritz now appeals from the trial court's order. The Committee cross-appeals from denial of its request for an award of attorney's fees and costs. We have jurisdiction under Arizona Revised Statutes Annotated (A.R.S.) section 19–122(C) (Supp.1997).

## THE APPEAL

¶ 6 The trial court found as a matter of law that the zoning ordinance governing Fritz's property was legislative. We review that finding de novo. *Board of Regents v. Phoenix Newspapers,* 167 Ariz. 254, 257, 806 P.2d 348, 351 (1991).

### Zoning is a Legislative Act

¶ 7 In multiple decisions over a lengthy period, this court has consistently held that zoning decisions are legislative acts subject to referendum. *See Pioneer Trust Co. v. Pima County,* 168 Ariz. 61, 64, 811 P.2d 22, 25 (1991) (even a city's conditional approval of an application for rezoning is subject to referendum); *Wait v. City of Scottsdale,* 127 Ariz. 107, 108, 618 P.2d 601, 602 (1980) ("It is well settled that the passage of an original zoning ordinance is the exercise of a legislative function."). *See also Queen Creek Land & Cattle Corp. v. Yavapai County,* 108 Ariz. 449, 451, 501 P.2d 391, 393 (1972) (refusing to bar referendum on supervisors' grant of a zoning change); *City of Phoenix v. Oglesby,* 112 Ariz. 64, 65, 537 P.2d 934, 935 (1975) (zoning is a function of the legislative branch); *City of Phoenix v. Fehlner,* 90 Ariz. 13, 17, 363 P.2d 607, 609 (1961) (establishing appropriate zoning classes is primarily legislative). We recently stated in *Pioneer Trust* that we are "not persuaded that any adequate reason has been demonstrated to overrule our earlier cases." 168 Ariz. at 64, 811 P.2d at 25.

### Rezoning Under a General Plan is a Legislative Act

¶ 8 Fritz argues that we need not overturn these cases because even if zoning is generally regarded as legislative, it becomes an administrative act when it merely implements the policies of a general plan. She relies on language in *Wennerstrom* regarding the difference between administrative and legislative acts. 169 Ariz. at 488–89, 821 P.2d at 149–50. She asserts that just as the city of Mesa's bond election in *Wennerstrom*

put the public on notice of the city's intention to construct road improvements, so the Kingman General Plan put the public on notice of the zoning classifications applicable to Fritz's land.

¶ 9 More specifically, she contends that the Kingman General Plan stated the precise policy that the subject property could be developed at a density ranging from one to four dwelling units per acre and that anyone who opposed this range of densities should have sought a referendum on the General Plan at the time of its adoption. She further contends that the rezoning ordinance allowing four dwelling units per acre merely implemented pre-existing policy embodied in the General Plan regarding the appropriate density for development of her land.

¶ 10 We do not believe that *Wennerstrom* departs from our earlier cases nor that it is dispositive here. In *Wennerstrom*, the city sought authority from the voters to issue bonds to fund city street improvements. 169 Ariz. at 486–87, 821 P.2d at 147–48. We held that the bond election was a legislative act but that later city council resolutions approving realignment and widening of certain streets were administrative acts not subject to referendum. *Id.* at 491–92, 821 P.2d at 152–53. The bond election represented legislative action by the voters because "they declared a public purpose *and provided the ways and means for its accomplishment.*" *Id.* at 491, 821 P.2d at 152 (emphasis added).

### Kingman's General Plan is Not Legislation

■ ¶ 11 To constitute legislation, a proposal must enact something; it must be a "definite, specific act or resolution." *Saggio v. Connelly*, 147 Ariz. 240, 241, 709 P.2d 874, 875 (1985). We have also stated that "[l]egislatures do not enact general principles." *McBride v. Kerby*, 32 Ariz. 515, 522, 260 P. 435, 437 (1927).

■ ¶ 12 Contrary to Fritz's argument, the city's General Plan is a statement of broad policies, goals, and principles. It enacts nothing definite or specific nor does it implement any law, purpose, or policy previously declared by the legislative body. *See*

*Wennerstrom,* 169 Ariz. at 489, 821 P.2d at 150 (quoting 5 E. McQuillin, *The Law of Municipal Corporations* § 16.55, at 266 (3d rev. ed.1989)).

¶ 13 The language of the General Plan itself mandates this conclusion. Its Forward states:

> What follows is a general development plan for the city of Kingman.... *The purpose of this document is not to recommend specific uses for specific locations. It is not super-layer zoning.* Rather, it is a statement of community concerns and development policies intended to aid decision-making in future community growth issues.

(Emphasis added.) Similarly, the city's resolution adopting the General Plan refers to the "generalized land use plan" contained therein and urges consideration of General Plan policies when the city makes the actual decisions to guide its growth. Nothing in the General Plan directly addresses the zoning of the Fritz property.

¶ 14 The Arizona statute requiring each municipality to adopt a general plan also reveals that a general plan, such as the city's, is to be an aspirational guide or statement of policies and preferences. *See* A.R.S. § 9–461.05(A). The statute provides in relevant part: "The general plan shall consist of a statement of community goals and development policies. It shall include a diagram ... and text setting forth *objectives, principles, standards and plan proposals.*" A.R.S. § 9–461.05(C) (emphasis added). The statute also requires a land use element to "designate[ ] the *proposed general distribution* and location and extent of such uses of the land for housing, business, industry," and other purposes. A.R.S. § 9–461.05(C)(1) (emphasis added).

¶ 15 From this language we conclude that a general plan need not command anything specific. It need not provide the ways and means of its own accomplishment and thus is not a self-executing document. To realize a general plan's abstract policies and preferences, the city must undertake further specific actions, adopt specific ordinances, and make use-specific decisions. These further decisions entail, among others, the zoning

ordinances that apply specific uses and densities to specific properties.

¶ 16 Therefore, we disagree with Fritz's characterization of the Kingman General Plan as *the* legislative act that renders subsequent zoning decisions mere administrative implementations. Instead, this General Plan clearly contemplated that future decisions such as imposing specific uses on specific locations would merely adhere to the Plan because the Plan itself does not descend to or mandate such specificity. Like the conceptual approval of street widening in *Wennerstrom*, adoption of Kingman's General Plan comprised conceptual land use planning "preliminary to a legislative act." 169 Ariz. at 491, 821 P.2d at 152.

### The General Plan Does Not Give Notice to Landowners

¶ 17 Furthermore, nothing in the General Plan puts landowners or their neighbors on notice of permitted uses, density of development, or other restrictions and conditions on specific properties. The time for citizens to object—indeed, their only opportunity—is when they have actual notice of specific legislative decisions regarding specific property. By its own admission, the General Plan does not provide such actual notice to specific landowners or their neighbors and thus its adoption could not trigger a referendum.

### Utah Law is Not Persuasive

¶ 18 Fritz urges us to adopt the Utah Supreme Court's view in *Wilson v. Manning*, 657 P.2d 251, 254 (Utah 1982), that a rezoning ordinance is not subject to referendum. In *Wilson*, a divided court declined to overturn a 1964 Utah case holding that a rezoning could not be referred to the electorate. The *Wilson* majority conceded that the original enactment of a zoning ordinance would be subject to referendum. *Id.* at 253. It found that a "change in a zoning classification" from residential to commercial was simply an amendment that "implement[ed] the comprehensive plan and adjust[ed] it to current conditions." *Id.* at 254. Such an amendment accordingly was an administrative act. *Id.*

The dissent contended that the rezoning was a legislative act which "by its very nature constitute[d] a material change ... not within the contemplation of the lawmaking body when the master plan was adopted by ordinance." *Id.* at 256 (Howe, J., dissenting).

¶ 19 Even if we accept the distinction offered in *Wilson* that adopting a new policy is a legislative act while implementing an existing policy is an administrative act, we are not persuaded that the majority properly applied this distinction. Instead we agree with the dissent that a change in the nature of a permitted use is a new policy not reflected in the master plan. In Fritz's case, the initial zoning law permitted one dwelling per acre; the rezoning placed her property in a new classification of four dwellings per acre. That change necessarily constitutes a new policy on the appropriate density of housing on her individual property. As such, it is a legislative decision.

¶ 20 We also note that, in contrast to Arizona, the relevant Utah statute subjects "master plan[s]" to the referendum process but expressly exempts "individual property zoning decisions." Utah Code Annotated § 20A–7–101 (1995).[2] Given this statutory dissonance, *Wilson* has no application in Arizona.

### Conclusion Regarding the Appeal

¶ 21 We find no error in the trial court's ruling that rezoning is a legislative decision subject to the referendum power reserved to the people in our constitution. *See* Ariz. Const. art. IV, § 1(8). Our decision subjects the rezoning of Fritz's property to a referendum vote at the city's next general election.

### THE CROSS–APPEAL

¶ 22 The Committee unsuccessfully requested from the trial court an award of attorney's fees and costs pursuant to Rule 11, Arizona Rules of Civil Procedure, and A.R.S. section 12–349 on the ground that Fritz filed suit to cause harassment and delay. It also seeks to recover the fees and costs incurred in this court. Our disagreement with Fritz's argument for application of *Wennerstrom* to

2. Formerly Utah Code Ann. § 20–11–24.

these facts does not imply that we find her argument frivolous. We affirm the denial of attorney's fees and costs based on our finding that Fritz made a good faith argument for extension of existing law. Each side will bear its own attorney's fees and costs on appeal.

ZLAKET, C.J., JONES, V.C.J., and FELDMAN and MARTONE, JJ., concur.

McGREGOR, J., did not participate in the determination of this matter; pursuant to Ariz. Const. art. VI, § 3, RUDOLPH J. GERBER, Judge Arizona Court of Appeals, Division One, was designated to sit in her stead.