87 P.3d 843

Timothy **REDELSPERGER**, a married man, Plaintiff–Appellant,

v.

**CITY OF AVONDALE**, an Arizona municipal corporation; Mayor Ronald J. Drake; Vice Mayor Marie Lopez–Rogers; Council Members Peggy Jones; Stephanie Karlin; Raymond Shuey; Betty Lynch; Albert Carroll, Jr., being the Mayor and Council of the City of Avondale in their official capacities; City Clerk Linda Ferris, in her official capacity, Defendants–Appellees,

and

Citizens for Better Avondale, Intervenor–Appellee.

No. 1 CA–CV 03–0309.

Court of Appeals of Arizona. Division One, Department A.

April 6, 2004.

Mariscal, Weeks, McIntyre & Friedlander, P.A., Phoenix, by Michael S. Rubin, James T. Braselton, for Plaintiff–Appellant.

C. Brad Woodford, Phoenix, for Defendants–Appellees.

Gallagher & Kennedy, P.A., Phoenix, by Jeffrey D. Gross, John D. DiTullio, for Intervenor–Appellee.

## OPINION

PORTLEY, J.

¶ 1 In this expedited appeal, we conclude that the approval of a conditional use permit is an administrative act and therefore not subject to the referendum power reserved to the citizens of a municipal corporation under Article 4, Part 1, Section 1(8), of the Arizona Constitution.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 On October 7, 2001, Timothy Redelsperger applied to the City of Avondale's Planning and Zoning Commission for a conditional use permit to construct a storage facility on property zoned C–2.[1] A majority of the Planning and Zoning Commission approved the conditional use permit on March 21, 2002.[2] Interested parties appealed the approval.[3]

¶ 3 On April 15, 2002, during a regular meeting, the City Council heard the appeal and voted against approving the conditional use permit. Redelsperger requested and received a rehearing. At the July 15, 2002 rehearing, the City Council, by a four to three vote, affirmed the Commission's initial approval of the conditional use permit.

¶ 4 Following the City Council's decision, Citizens for Better Avondale ("CBA"), a local interest group, sought and received a referendum petition number from the City Clerk. Referendum petitions were circulated requesting that the City Council place the matter regarding Redelsperger's application on the ballot for a vote at a future election by

---

1. C–2 represents the "Community Commercial District." City of Avondale Zoning Ordinance ("Zoning Ordinance") § 301 (2001) *available at* http://www.ci.avondale.az.us/ZoningOrdinance.pdf. "This district is intended to accommodate development of commercial complexes providing goods and services to a community-wide trade area." *Id.* § 302. The land use matrix, accompanying the Zoning Ordinance, indicates that a storage facility is neither permitted outright nor prohibited, but permitted conditionally, *i.e.*, a conditional use. *Id.* § 303.

 The designation of a use as a conditional use in a zoning district does not constitute an authorization or an assurance that such use will be approved. Each proposed conditional use shall be evaluated by the Planning Commission for compliance with the standards and conditions set forth in this Section and for each district.

 . . . .

 Requests for conditional use permits shall be heard by the Planning Commission which shall hold a public hearing and approve, approve with modifications, or deny the request for the conditional use permit. *Id.* § 108(B).

 The granting of a conditional use permit rests solely within the discretion of the Planning and Zoning Commission. *Id.* § 108(B)(3).

2. This, in fact, was the second hearing held before the Planning and Zoning Commission on this matter. A second hearing was conducted because of an error with the advertising.

3. The Zoning Ordinance provides that:

 An appeal of the decision of the Planning Commission concerning a conditional use permit may be initiated by any person aggrieved or by any officer, department or board of the City affected by the decision by filing an appeal with the Planning Department within fifteen (15) days of said decision. The appeal shall be submitted to the City Council at a regularly scheduled meeting. The Council may approve, approve with modifications, or deny the appeal. A majority vote of Council shall be necessary to make a finding on the appeal. *Id.* § 108(B).

the qualified electors of the City of Avondale. Sufficient signatures were collected.

¶ 5 On January 22, 2003, Redelsperger filed an action in Maricopa County Superior Court seeking relief in the form of a writ of mandamus declaring that the matter was not a legislative matter subject to referendum. The action also sought to permanently enjoin the City of Avondale, its Council members, and City Clerk from certifying or placing the matter on an election ballot. By stipulation, CBA was allowed to intervene as a defendant.

¶ 6 After taking the matter under advisement, the trial court concluded that the City Council acted in a legislative capacity on July 15, 2002, when it approved Redelsperger's conditional use permit and therefore such legislative action was subject to referendum action. The trial court, in turn, denied Redelsperger's requests for relief. The trial court also waived the requirements of Arizona Rule of Civil Procedure 58 and signed the minute entry as a final order and judgment.

¶ 7 Redelsperger timely appeals the judgment of the trial court. The inquiry on appeal is whether the issuance of a conditional use permit is a legislative act subject to the referendum power. In accordance with our jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12–2101(F)(2) (2003) and 19–122(C) (2002), we review this matter de novo. See, e.g., Robson Ranch Mountains, L.L.C. v. Pinal County, 203 Ariz. 120, 125, ¶ 13, 51 P.3d 342, 347 (App.2002) (applying de novo standard of review to trial court's denial of declaratory and injunctive relief that sought to prohibit referendum pertaining to rezoning ordinances from being placed on general election ballot, because the trial court's rulings hinged on mixed questions of law and fact and pure questions of law, including matters of statutory interpretation and constitutional issues).

## DISCUSSION

¶ 8 The Arizona Constitution reserves the power of referendum to the qualified electors of municipal corporations. Ariz. Const. art. 4, pt. 1 § 1(8). The referendum power, as outlined in the Arizona Constitution, has two forms. Wennerstrom v. City of Mesa, 169 Ariz. 485, 488, 821 P.2d 146, 149 (1991). The first form permits the legislature to refer a legislative enactment to a popular vote. Ariz. Const. art. 4, pt. 1 § 1(3). The second form, and the one applicable to this appeal, permits qualified electors to circulate petitions and refer legislation which has been enacted by their elected representatives to a popular vote. Id.

¶ 9 Although the constitutional right to referendum is broadly construed, Lawrence v. Jones, 199 Ariz. 446, 449, ¶ 7, 18 P.3d 1245, 1248 (App.2001), its application is limited to legislative acts, Wennerstrom, 169 Ariz. at 488, 821 P.2d at 149. This limitation is necessary because allowing referenda on executive and administrative actions would hamper the efficient administration of local governments. Id. Municipal corporations, like the City of Avondale, act in several capacities: legislative, executive, administrative, and quasi-judicial. Id.; see also 5 Eugene McQuillin, The Law of Municipal Corporations § 16.55 (3rd ed.1996). Hence, in order for the referendum power to be applicable, the approval of the conditional use permit must be a legislative act.

¶ 10 The Zoning Ordinance defines a conditional use permit as a "permit granted to a property owner or leasee on a conditional basis to conduct a use allowed in a zoning district subject to certain requirements." Zoning Ordinance § 102 (with internal reference to § 108). As a preliminary matter, we note that the terms "conditional use permit" and "special use permit" are synonymous and are often used interchangeably. Accord City of Atlanta v. Wansley Moving & Storage Co., 245 Ga. 794, 267 S.E.2d 234, 235 (1980); Richmarr Holly Hills, Inc. v. Am. PCS, L.P., 117 Md.App. 607, 701 A.2d 879, 897 n.26 (Ct.Spec.App.1997); Gray v. White, 26 S.W.3d 806, 817 (Mo.Ct.App.1999); Mt. Bethel Humus Co. v. State Dep't of Envtl. Prot. & Energy, 273 N.J.Super. 421, 642 A.2d 415, 418 (Ct.App.Div.1994); Coastal Ready–Mix Concrete Co. v. Bd. of Comm'rs, 299 N.C. 620, 265 S.E.2d 379, 381 (1980); Harding v. Bd. of Zoning Appeals, 159 W.Va. 73, 219 S.E.2d 324, 327 (1975).

■ ¶ 11 The characterization given to the act of granting or denying a conditional use permit is determinative in this appeal. Redelsperger asserts that the issuance of the conditional use permit is either an administrative or quasi-judicial act. The City and CBA, however, contend that the act is legislative in nature and therefore subject to the referendum power.

■ ¶ 12 We begin by summarily dismissing Redelsperger's argument that the issuance of a conditional use permit is quasi-judicial. An entity "acts in a quasi-judicial manner when it is under a statutory duty to consider evidence and apply the law to facts it finds." *Stoffel v. Ariz. Dep't of Econ. Sec.,* 162 Ariz. 449, 451, 784 P.2d 275, 277 (App. 1989); *see, e.g., Foote v. Gerber,* 85 Ariz. 366, 371, 339 P.2d 727, 730 (1959); *Batty v. Ariz. State Dental Bd.,* 57 Ariz. 239, 245–46, 112 P.2d 870, 873 (1941); *Bd. of Regents of Univ. & State Colls. v. Frohmiller,* 69 Ariz. 50, 65, 208 P.2d 833, 843 (1949) (Phelps, J., dissenting). In this case, the act is not quasi-judicial. As explained in detail later, the Commission is not applying law to facts, but instead considering enumerated factors in making a determination. We next must determine whether the act is administrative or legislative.

¶ 13 The Arizona Supreme Court has provided the following analysis for distinguishing between administrative and legislative decisions:

> Actions relating to subjects of a permanent and general character are usually regarded as legislative, and those providing for subjects of a temporary and special character are regarded as administrative. In this connection an ordinance which shows an intent to form a permanent rule of government until repealed is one of permanent operation.
>
> The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it. *Similarly, an act or resolution constituting a declaration of public purpose and making provision for ways and means of its accomplishment is generally legislative as distinguished from an act or resolution which merely carries out the policy or purpose already declared by the legislative body.*

*Wennerstrom,* 169 Ariz. at 489, 821 P.2d at 150 (quoting 5 Eugene McQuillin, *The Law of Municipal Corporations* § 16.55 (3rd ed.1989) at 266); *see generally* Nicolas M. Kublicki, Comment, *Land Use By, For, and Of the People: Problems with the Application of Initiatives and Referenda to the Zoning Process,* 19 Pepp. L.Rev. 99, 123–35 (1991) (discussing the tests used by state courts to interpret what constitutes a legislative versus an administrative zoning action).

¶ 14 CBA urges us to "liberally resolve doubts [as to whether an act is referable] in favor of a legislative determination." Given the sufficiency of the test set forth in *Wennerstrom,* we reject the invitation. Similarly, we decline to apply *Kaahumanu v. County of Maui,* 315 F.3d 1215, 1220 (9th Cir.2003) (identifying four non-mutually exclusive factors used for determining whether an action is "legislative" for purposes of legislative immunity under 42 U.S.C. § 1983), *Kirschenman v. Hutchinson County Board of Commissioners,* 656 N.W.2d 330, 332–34 (S.D. 2003), and *Stephenson v. Town of Garner,* 136 N.C.App. 444, 524 S.E.2d 608, 612–14 (2000).

■ ¶ 15 Under the *Wennerstrom* analysis, we must consider whether the action is (1) permanent or temporary, (2) of general or specific (limited) application, and (3) a matter of policy creation or a form of policy implementation. 169 Ariz. at 489, 821 P.2d at 150. First, we look to the permanency of the action. The Zoning Ordinance does not set forth the duration of a conditional use permit. As a consequence, a conditional use properly commenced within twenty-four months of the permit's issuance could argu-

ably continue indefinitely.[4] We note, however, that the Zoning Ordinance authorizes the Planning Commission to impose conditions on a conditional use permit "including requirements for periodic renewal of the permit as warranted by the nature of the use." *Id.* § 108(B)(5). Next, we consider whether the action is general or specific in nature. By definition, a conditional use permit is applicable only to a specific area; otherwise, the action would probably be more appropriately a "Zoning Ordinance Amendment." *See id.* § 109. The last prong, and the source of the parties' disagreement, focuses on whether the action represents policy creation or the implementation of existing policy.

¶ 16 Throughout this appeal, the parties have disagreed about the applicability of discretion in determining whether an act is policy creation or policy implementation. The conflict primarily stems from *State v. Oakley,* 180 Ariz. 34, 37–38, 881 P.2d 366, 369–70 (App.1994), wherein this court proceeded to explain the distinction between a legislative and administrative enactment. In determining whether the approval of new election districts was subject to referendum, we quoted the following with approval:

> When a municipal governing body has latitude within its discretion in adopting the specific provisions of an ordinance, its enactment is legislative and subject to referendum, even though its authority to legislate on that subject has been delegated to it by State law. When a municipal governing body is merely complying with and putting into execution a State or local legislative mandate in adopting an ordinance, in effect exercising a ministerial function, its enactment is administrative and not subject to referendum.

*Id.* (quoting *Menendez v. City of Union City,* 211 N.J.Super. 169, 511 A.2d 676, 677–78 (Ct.App.Div.1986)). Discretion is a factor of consideration when distinguishing between

policy implementation and policy creation. The more discretion afforded, the more likely the act is legislative. Discretion, however, is not the ending point in our analysis. It is simply another factor to be considered. In this case, the Commission is afforded some discretion in the grant or denial of a conditional use permit.[5] *See* Zoning Ordinance § 108. However, that discretion is not without limitation. *See id.*

¶ 17 Section 108, which governs the issuance of conditional use permits, states that:

> Review of conditional use permits shall include, but not be limited to, examination of the following factors, where applicable:
> a. Consistency with the Comprehensive Plan.
> b. Ingress and egress to property and proposed structures, pedestrian and vehicular circulation with particular reference to fire protection.
> c. Off-street parking and loading.
> d. General compatibility of use with adjacent property and property in the district.
> e. Impact on public services, including schools, recreation and utilities.
> f. Screening and buffering of uses.
> g. Signage.
> h. Exterior lighting with reference to adjacent properties.
> i. Storm water retention and landscaping.
> j. Site and building design.
> k. Damage or nuisance arising from noise, smoke, odor, dust, vibration, or illumination.
> l. Volume or character of traffic.
> m. A demonstrated need for such use.
>
> The granting of such conditional use permit rests solely with the discretion of the Commission upon finding that the applicant has complied with the following required standards and has demonstrated that:

---

4. "Unless otherwise stipulated, a conditional use permit shall be void if the use is not commenced within twenty-four (24) months of approval." Zoning Ordinance § 108(B)(4).

5. A reading of Section 108 also indicates that there is no support for Redelsperger's contentions that "the decision to issue a [conditional use permit is] effectively 'mandated' by Avondale law" and "the Commission has no authority to deviate from, amend, or ignore those established factors."

a. The conditional use is in conformance with the City Comprehensive Plan, its goals and policies, and any applicable specific plans.

b. The conditional use will not be detrimental to persons residing or working in the vicinity, to the neighborhood, or the public welfare in general.

c. The conditional use will be in conformity with the conditions, requirements, or standards prescribed by this Code.

d. The conditional use is compatible and consistent with the community character of the immediate vicinity of the parcel proposed for the conditional use.

e. The design of the proposed use minimizes adverse effects, including design and environmental impacts on adjacent properties.

f. The proposed use will not have an adverse effect on the value of adjacent property.

g. The applicant has demonstrated that public facilities and services are capable of serving the conditional use.

. . . .

Any conditional use permits granted may be subject to such conditions as the Commission deems applicable in order to fully carry out the provisions and intent of this Ordinance, including requirements for periodic renewal of the permit as warranted by the nature of the use.

Zoning Ordinance § 108(B)(2), (3) and (5). Unlike the situation in *Oakley*, the Planning and Zoning Commission is guided by objective criteria and standards when considering the grant or denial of a conditional use permit.

¶ 18 CBA argues that "by simply listing mini-storage facilities as possible conditional uses without delineating any development standards, and by making approval subject to the broad exercise of discretion, the City was reserving its legislative powers until an actual application for the use was filed." As a matter of law, we cannot agree. Legislative powers cannot be delegated to administrative bodies. *Wells–Stewart Constr. Co. v. Martin Marietta Corp.*, 103 Ariz. 375, 378, 442 P.2d 119, 122 (1968); *Haggard v. Indust. Comm'n*, 71 Ariz. 91, 100, 223 P.2d 915, 921 (1950); *Loftus v. Russell*, 69 Ariz. 245, 254–55, 212 P.2d 91, 97 (1949). A legislative body may, however, "confer authority upon an agency or department to exercise its discretion in administering the law." *Lake Havasu City v. Mohave County*, 138 Ariz. 552, 559, 675 P.2d 1371, 1378 (App. 1983). "The powers given an administrative board must, by the provisions of the act, be surrounded by standards, limitations, and policies. Only within such boundaries may the board act." *Hernandez v. Frohmiller*, 68 Ariz. 242, 255, 204 P.2d 854, 863 (1949). Without standards to guide an administrative agency, there may be an unconstitutional delegation of legislative powers. *See id.* That is not the situation in this case, since Section 108 of the Zoning Ordinance provides an objective standard for the Commission to follow.

¶ 19 Equally unpersuasive is CBA's argument suggesting that "[t]he fact that the Planning Commission is charged with making the initial decision to issue the conditional use permit does not convert the process into an administrative one" because "[t]he Planning Commission's decision is subject to City Council review." Although a legislative body, the local ordinance limits the City Council's role in the issuance or denial of a conditional use permit. Its involvement is limited to being an appellate forum—approve, approve with modifications, or deny the appeal. Zoning Ordinance §§ 103(A)(2), 108(B). If an appeal is not taken, the City Council is not involved and the conditional use permit is still granted or denied. Contrary to CBA's assertion, the curtailed involvement of the City Council does not make the act legislative per se.[6]

¶ 20 Citing *City of Tucson v. State*, 191 Ariz. 436, 957 P.2d 341 (App.1997), CBA argues that the "City's interpretation of its ordinance is entitled to weight" and states that the City treats "most of these issues [as]

---

6. For the same reasons, we disagree with CBA's conclusion that "[p]olicy was only made when the City Council approved Redelsperger's mini- storage after consideration of public health, safety and welfare factors."

*policy decisions* for the Mayor and Council to make." Although the City's interpretation of its Zoning Ordinance should be accorded some weight, it is not binding on this court. *Jones v. County of Coconino,* 201 Ariz. 368, 371 n. 1, ¶ 16, 35 P.3d 422, 425 n. 1 (App. 2001). The matter remains a judicial question for us to answer. 5 Eugene McQuillin, *The Law of Municipal Corporations* § 16.55 (3rd ed.1996) at 298.

 ¶ 21 In light of the foregoing, we find that the Zoning Ordinance represented legislative action because it declared a public policy and provided the ways and means for its accomplishment, *Wennerstrom,* 169 Ariz. at 491, 821 P.2d at 152; whereas, the issuance or denial of a conditional use permit is a mean or method of implementing the general policy already set forth in the Zoning Ordinance. Support is garnered for this finding from the Zoning Ordinance itself:

*Purpose*

In its interpretation and application, the provisions of this Ordinance shall be held to the minimum requirements adopted to *implement and promote the Comprehensive Plan of the City of Avondale* for the protection of its citizens.

Zoning Ordinance § 101(B)(1) (emphasis added).

¶ 22 In arguing that the issuance of a conditional use permit should be deemed legislative action, the City and CBA analogize a conditional use permit to a change in zoning and expound on the similarities among the notice and application procedures associated with each. *Compare* Zoning Ordinance §§ 108 (conditional use permit procedure), *and* 111 (notification of public hearings), *with* A.R.S. §§ 9–462.03 (amendment procedure), *and* 9–462.04 (public hearing requirement) (Supp.2003); *see also Pioneer Trust Co. v. Pima County,* 168 Ariz. 61, 65, 811 P.2d 22, 26 (1991) (conditional approval of an application to rezone is a legislative act). In an attempt to infer that the two are the same, the City directs our attention to *Wait v. City of Scottsdale,* 127 Ariz. 107, 109, 618 P.2d 601, 603 (1980), wherein our Supreme Court stated that:

Zoning is much more than mere classification of a particular piece of property as appellants would have us believe. Among other things it involves consideration of future growth and development, public streets, pedestrian walkways, drainage and sewage, increased traffic flow, surrounding property values and many other factors which are within the legislative competence.

We acknowledge that, in some instances, both actions require the review of similar factors, but despite their purported similarities, rezoning is not akin to the issuance of a conditional use permit.

¶ 23 First of all, general zoning decisions establishing public policy with regards to the City of Avondale are committed to the City Council. A.R.S. § 9–462.01 (Supp.2003); *see also* Zoning Ordinance § 109(A). In comparison, the initial authority to approve a conditional use permit rests with the Planning Commission. Zoning Ordinance § 108(B). More importantly, a change in zoning is a general declaration of public policy of permanent duration (or until a new public policy *i.e.,* legislation is enacted); whereas a conditional use permit involves the implementation of existing policy to a specific site, the grant of which may be temporary or subject to renewal procedures. *See discussion supra.*

¶ 24 The City and CBA, in their respective briefs, contend that Arizona jurisprudence has already characterized the act of issuing or denying a conditional use permit. We will address each in turn.

¶ 25 According to CBA, *Fritz v. City of Kingman,* 191 Ariz. 432, 957 P.2d 337 (1998), is dispositive of this appeal. We disagree. In *Fritz,* our Supreme Court not only reaffirmed the *Wennerstrom* decision but also concluded that a rezoning ordinance was subject to referendum because the City of Kingman acted in a legislative manner when they adopted the ordinance. 191 Ariz. at 432–33, ¶ 1, 957 P.2d at 337–38. *Fritz* is not controlling because it dealt with rezoning and, as stated earlier, rezoning is distinct from a conditional use permit.

¶ 26 The City asserts that:

This court should not change the decision of the City of Avondale to grant conditional use permits by legislative process in a Planned Area Development and entryway to the City. As the court did in the cases of *Bartolomeo v. Town of Paradise Valley,* 129 Ariz. 409, 631 P.2d 564 (App. 1981), and *Town of Paradise Valley v. Gulf Leisure Corp.,* 27 Ariz.App. 600, 557 P.2d 532 (1976), this court should leave the decision of whether to grant a conditional use permit by legislative means to the City's legislative body to decide.

The *Paradise Valley* cases are distinguishable from the present matter. In both cases, because the entire municipality was zoned for residential use, the courts drew no distinction between rezoning and a conditional use permit. In both opinions, the court stated:

> At the outset, it must be noted for purposes of our discussion that no distinction is drawn between "special use permit", "variance", "rezoning", "amendment", or "building permit" with regard to Paradise Valley. All these terms, while technically different in various circumstances, 101 C.J.S. *Zoning* §§ 268–275, have no real significance, at least as to their generally accepted usage, to the manner Paradise Valley zones its community. Paradise Valley zones its entire area R–43 (residential with one-acre lots) and allows variations to this singular zoning through the utilization of "special use permits", "amendments" or "variances". In effect, Paradise Valley through these devices re-zones its area to accommodate new uses. We will treat all these terms synonymously.

*Gulf Leisure Corp.,* 27 Ariz.App. at 605, 557 P.2d at 537; *Bartolomeo,* 129 Ariz. at 415–16, 631 P.2d at 570–71 (quoting *Gulf Leisure Corp.*). Moreover, in *Bartolomeo,* the court, with citations to two rezoning cases, concluded that "the granting or the refusal to grant rezoning by special use permit is a legislative function of the Town Council subject to limited review by this Court." 129 Ariz. at 416, 631 P.2d at 571 (citing to *Wait,* 127 Ariz. at 108, 618 P.2d at 602 (where property owners sought to rezone their property through an amendment to the zoning ordinance, the Arizona Supreme Court concluded that the

amendment to the zoning ordinance was of legislative character) and *New Pueblo Constructors, Inc. v. Pima County,* 120 Ariz. 354, 586 P.2d 199 (App.1978) (in upholding the Pima County Board of Supervisors' refusal to rezone the subject property from general rural classification to an industrial zone, the Court of Appeals stated that "the matter of zoning is appropriately one for the legislative branch of government")).

¶ 27 In *Sandblom v. Corbin,* 125 Ariz. 178, 184–85, 608 P.2d 317, 323–24 (App.1980), while considering the kind of action the Maricopa County Board of Supervisors could take without prior notice and hearing, we indicated that:

> When a Board of Supervisors enacts a zoning ordinance or amendment thereto, it acts in a legislative capacity.
>
> . . . .
>
> On the other hand, the issuance of a special use permit is generally recognized as an administrative act, because, even though the permit may authorize a change in the property's use, such use is already sanctioned by the provisions of the existing ordinance upon approval of the proper administrative authorities. As a result, the public is not affected to as great a degree by the issuance of these permits as they would be in cases of changes in zoning, because they are already on notice that these special uses are permissible by administrative decree.

(Citations omitted). We find the rationale of *Sandblom* instructive to this matter. CBA argues that "[u]nlike *Sandblom,* the City has not made a legislative decision that mini-storage facilities are 'permissible by administrative decree.'" We disagree because although not labeled an "administrative decree," the Zoning Ordinance declares the administrative policies regarding land use in the City of Avondale.

¶ 28 After due consideration, we conclude that the issuance of a conditional use permit is an administrative act. *Accord Johnston v. City of Claremont,* 49 Cal.2d 826, 323 P.2d 71, 75 (1958); *Bossert Corp. v. City of Norwalk,* 157 Conn. 279, 253 A.2d 39, 42 (1968); *Cota v. Northside Hosp. Ass'n,* 221 Ga. 110, 143 S.E.2d 167, 169 (1965); *Gallik v. County*

438

*of Lake,* 335 Ill.App.3d 325, 269 Ill.Dec. 725, 781 N.E.2d 522, 525 (2002); *Hessee Realty, Inc. v. City of Ann Arbor,* 61 Mich.App. 319, 232 N.W.2d 695, 698 (1975); *State ex rel. Ludlow v. Guffey,* 306 S.W.2d 552, 556 (Mo. 1957); *City of Henderson v. Henderson Auto Wrecking, Inc.,* 77 Nev. 118, 359 P.2d 743, 745 (1961); *Ivkovich v. Steubenville,* 144 Ohio App.3d 25, 759 N.E.2d 434, 438–39 (2001); *N. Point Breeze Coalition v. City of Pittsburgh,* 60 Pa.Cmwlth. 298, 431 A.2d 398, 399–400 (1981); *Durocher v. King County,* 80 Wash.2d 139, 492 P.2d 547, 555 (1972); *see generally* 3 Edward H. Ziegler, Jr. et al., *Rathkopf's The Law of Zoning and Planning* § 46:7 (4th ed. 1994) ("[T]he implementation of existing zoning ordinances, by the grant of a variance, special use permit or tentative approval of a subdivision plat, generally is considered to involve 'administrative action' not properly subject to voter initiative or referendum."); Kenneth H. Young, *Anderson's American Law of Zoning* § 21.10 (4th ed. 1996) ("[Even when the] permit issuing authority is retained by the legislature, the granting or denial of special permits by that body is regarded by most courts as an administrative rather than a legislative function.").

¶ 29 Having concluded that the issuance of a conditional use permit is not a legislative act, we likewise must conclude that the approval of Redelsperger's conditional use permit is not subject to the referendum power afforded to qualified electors in the City of Avondale.

## CONCLUSION

¶ 30 For the aforementioned reasons, we reverse and remand this matter to the trial court with instructions to grant declaratory and injunctive relief in favor of Redelsperger.

THOMPSON, P.J. and PATTERSON, J., concurring.