IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————

**DEBRA ROUNDTREE, AN INDIVIDUAL; STEVEN KIDMAN, AN INDIVIDUAL; PAGE ACTION COMMITTEE, A REGISTERED POLITICAL COMMITTEE,**
*Plaintiffs/Appellants,*

*v.*

**CITY OF PAGE, A POLITICAL SUBDIVISION OF THE STATE OF ARIZONA; KARY HOLLOWAY, IN HER OFFICIAL CAPACITY AS CITY CLERK; KIM LARSON, IN HER OFFICIAL CAPACITY AS ACTING DEPUTY CITY CLERK,**
*Defendants/Appellees.*

———————

No. CV-24-0144-PR
Filed July 30, 2025

———————

Appeal from the Superior Court in Coconino County
No. S0300CV202400227
The Honorable Cathleen Brown Nichols, Judge
**REVERSED AND REMANDED WITH INSTRUCTIONS**

Memorandum Decision of the Court of Appeals, Division One
1 CA-CV 24-0387 EL
Filed July 2, 2024
**VACATED**

———————

COUNSEL:

James E. Barton II (argued), Jacqueline Mendez Soto and Daniella Fernandez Lertzman, Barton Mendez Soto PLLC, Tempe, Attorneys for Debra Roundtree, et al.

Christina Estes-Werther, Jon M. Paladini (argued) and Matthew W. Schiumo, Pierce Coleman PLLC, Scottsdale, Attorneys for City of Page, et al.

Emily Ward, Fennemore Craig, P.C., Phoenix, Attorneys for Amici Curiae Daniel R. Luster and Lyle S. Dimblatt

Nancy L. Davidson, League of Arizona Cities and Towns, Phoenix, Attorneys for Amicus Curiae League of Arizona Cities and Towns

───────────────

JUSTICE BOLICK authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ, and JUSTICES BEENE, MONTGOMERY, KING, and BERCH (Ret.)[1] joined.

───────────────

JUSTICE BOLICK, Opinion of the Court:

¶1        We hold in this case that an initiative proposed by residents of the City of Page (the "City"), decreeing that a certain street within the City shall never be narrowed, is legislative in nature and therefore falls within the citizens' right to initiate laws at the local level pursuant to article 4, part 1, section 1(8) of the Arizona Constitution.

## BACKGROUND

¶2        The proposed initiative in this case takes place against the backdrop of the City's Streetscape Project (the "Project").  The Project, as

───────────────

[1] Justice Cruz is recused from this matter.  Pursuant to article 6, section 3 of the Arizona Constitution, Justice Rebecca White Berch (Ret.) of the Arizona Supreme Court was designated to sit in this matter.

envisioned by the City, the City of Page City Council (the "Council"), and community members, sought to increase local economic development following the departure of the City's largest employer. Among many other features, the Project aimed to revitalize the City's downtown, in part, by reducing the size and number of lanes within a portion of Lake Powell Boulevard. After six years of extensive planning, the Council approved a budget that included an appropriation for the Project, and the City began contracting with firms to engineer and construct its design.

¶3    The Page Action Committee, committee member Debra Roundtree, and qualified city elector Steven Kidman (collectively, the "Committee") opposed the Project's reduction in the width of Lake Powell Boulevard, and they drafted an initiative (the "Initiative") to maintain the size and lanes of the road:

> The citizens of Page, Arizona do hereby find and determine that it is in the best interest of the citizens to maintain the size and number of traffic lanes at Laek [sic] Powell Boulevard from Rim View Drive to Aspen Street as presently existed on October 1, 2023. And further, that making changes that degrade the usefulness of this portion of road is wasteful of the public fisc and harmful to the general welfare.
> . . . .
> Neither public resources of the City nor outside funds from any source shall be used in anyway [sic] to facilitate, encourage, support, or actualize a reduction in the number of lanes or size of Lake Powell Boulevard between Rim View Drive and Aspen Street from the current size and number of lanes.

¶4    The Committee applied for a serial number, collected the requisite number of signatures, and submitted its signed petition sheets to the City. The City rejected the Initiative and refused to place it on the ballot, concluding that it was "not a legislative act," thus rendering it invalid under article 4, part 1, section 1(8) of the Arizona Constitution. Consequently, the Committee filed a special action complaint in the superior court where the Initiative was also found to be non-legislative in nature. The Committee appealed.

¶5    The court of appeals affirmed the superior court's findings, emphasizing that the judiciary may only enjoin the placement of an

3

otherwise qualified initiative on the ballot if it does not constitute legislation. *Roundtree v. City of Page*, No. 1 CA-CV 24-0387 EL, 2024 WL 3273984, at *2 ¶ 10, *3 ¶ 16 (Ariz. App. July 2, 2024) (mem. decision). The court explained that in deciding whether an initiative is legislative, one must consider "whether the proposition is (1) permanent or temporary, (2) of general or specific, limited application, and (3) a matter of policy creation versus a form of policy implementation." *Id.* at *3 ¶ 13 (citing *Wennerstrom v. City of Mesa*, 169 Ariz. 485, 489 (1991)).

**¶6**　　　　As for the first two factors, the court concluded that the Initiative was "of 'specific (limited) application'" because, while it was not subject to any temporal limitation, the Initiative only concerned a 1.4-mile portion of a 3.4-mile road. *Id.* ¶ 14. The court also found that the Initiative failed to satisfy the third factor. *Id.* ¶ 15. The court determined that the City already established policy by creating the Project, and that the Initiative "attempts to control" the implementation of this policy. *Id.* Because the Initiative attempts only to control the size and number of lanes within the Project—an administrative duty of the City—the court reasoned that the subject matter of the Initiative is administrative rather than legislative. *Id.* Thus, the court concluded that the Committee was not entitled to relief. *Id.*

**¶7**　　　　This Court granted review on the rephrased question of whether the Initiative complies with article 4, part 1, section 1(8), as the constitutional rules governing local citizen initiatives are a matter of statewide concern. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## ANALYSIS

**¶8**　　　　As the City's action in excluding the proposed Initiative from the ballot is based solely on constitutional concerns, this case presents purely legal issues that we review de novo. *See AZ Petition Partners LLC v. Thompson*, 255 Ariz. 254, 257 ¶ 9 (2023).

**¶9**　　　　The Committee makes two arguments about why the proposed Initiative falls within the constitutional authority of the City's electors. The Committee first argues that article 4, part 1 authorizes initiatives on any matter, rather than only proposed legislation. Thus, according to the Committee, the relevant inquiry is not whether the Initiative is administrative or legislative, but whether general laws authorized the City to enact a measure. If so, the Initiative complies with

4

the constitution, even if administrative. Alternatively, if article 4, part 1 only authorizes electors to propose legislation, the Committee argues that the Initiative is legislative rather than administrative. In particular, the Committee asserts that if the three-part *Wennerstrom* test applies to this determination, as the court of appeals held, *Roundtree*, 2024 WL 3273984, at *3 ¶¶ 13–15, the Initiative is legislative because (1) it seeks to enact a permanent rule; (2) the fact that it affects a single geographic location does not make it administrative; and (3) it creates rather than administers policy.

¶10        The City argues, in response, that the Arizona Constitution requires initiatives to be legislative in nature because initiatives must be on "matters the City is 'empowered by general laws to legislate.'" *See* Ariz. Const. art. 4, pt. 1, § 1(8). The City asserts that the Initiative implements already established City policy, specifically the Project. Further, the City contends it already passed an ordinance that gives the city engineer control over city streets; thus, the Initiative would supplant the city engineer's delegated administrative authority, which makes the Initiative administrative in nature.

¶11        The foundational principle that informs this case is that the people's power to make laws is co-equal to their elected representatives' authority to create legislation. *See, e.g.*, *League of Ariz. Cities & Towns v. Brewer*, 213 Ariz. 557, 559 ¶ 9 (2006). But it is not without limit. As explained below, we agree with the City that initiatives must be legislative in nature. But because we conclude that the Initiative proposes legislation, it is a proper matter for the City's voters to decide.

**A.**

¶12        We can quickly dispose of the Committee's argument that article 4, part 1 authorizes initiatives on any matter, rather than only proposed legislation. *See generally* Ariz. Const. art. 4, part 1 (titled "Legislative authority, initiative and referendum"). The broad language the Committee cites can be found in section 2, which defines the initiative power and provides that qualified electors "have the right to propose any measure." Ariz. Const. art. 4, part 1, § 2.

¶13        We interpret statutory and constitutional provisions not in isolation, but in context with other provisions covering the same subject matter, to ensure that the provisions' meaning is effectuated. *See, e.g.*, *In re Chalmers*, ___ Ariz. ___, 2025 WL 1910574, at *3 ¶ 18 (2025) (stating

"[c]ontext is *always* relevant to statutory interpretation" (emphasis in original)). Part 1 goes on to specify in section 8, titled "Local, city, town or county matters," that qualified electors in such subdivisions of the state have the power of initiative and referendum "as to all matters" on which such entities "are or shall be empowered by general laws to *legislate*." Ariz. Const. art. 4, part 1, § 8 (emphasis added). Because section 1(8) expressly limits the general power of initiative in this specific context, we construe that power as extending only to legislation the City itself could adopt. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 183 (2012) ("[i]f there is a conflict between a general provision and a specific provision, the specific provision prevails"); *see generally Fleischman v. Protect Our City*, 214 Ariz. 406, 410 ¶ 24 (2007) ("The legislature has directed that the general laws governing the procedures for ballot measures shall apply to municipalities and counties 'except as specifically provided to the contrary' in state law." (quoting A.R.S. § 19-141(A))).

¶14 Put differently, local governments typically possess powers beyond their legislative authority, specifically executive, administrative, and quasi-judicial (e.g., zoning determinations). *Wennerstrom*, 169 Ariz. at 488. As the title of part 1 portends, and as subsection 8 plainly specifies, local governments share with their qualified electors only their legislative power, not such other governance powers.[2]

¶15 This Court has repeatedly held that initiatives and referenda must constitute legislation. *See League of Ariz. Cities & Towns*, 230 Ariz. at 560 ¶ 13 ("[W]e will review to determine whether an initiative in fact constitutes legislation."); *Wennerstrom*, 169 Ariz. at 491 ("Arizona's Constitution permits qualified electors to refer *legislation*." (emphasis in original)). Nevertheless, the Committee relies on several cases to support its contention that initiatives need not constitute legislation. *See Fann v. State*, 251 Ariz. 425 (2021); *Ariz. Chamber of Com. & Indus. v. Kiley*, 242 Ariz. 533 (2017); *State v. Osborn*, 16 Ariz. 247 (1914). However, none of those cases

---

[2] Although we do not turn to secondary sources such as legislative history where plain meaning is dispositive, as here, *see In re McLauchlan*, 252 Ariz. 324, 326 ¶ 15 (2022), one constitutional delegate's crisp observation as to the meaning of article 4 bears repeating: "*What do we have the right to initiate? Law. Anything else? No.* We have the right, as laid down here, to simply initiate law." *The Records of the Arizona Constitutional Convention of 1910*, at 183 (John S. Goff ed., 1991) (emphasis added) (quoting delegate Andrew Parsons).

construe subsection 8 to allow local initiatives that transcend the legislative power, and we decline to go beyond the plain language of that provision to do so today.

**B.**

¶16 Nonetheless, the citizens' power to legislate is broad; indeed, they may exercise their initiative power on any matters over which their elected representatives "are or shall be empowered by general laws to legislate." Ariz. Const. art. 4, part 1, § 8. Arizona Revised Statutes § 9-240(B)(3)(a) gives city councils authority over their streets. Therefore, just as the City may legislate regarding the streets—as it did with the Project—so too may the City's qualified electors. Hence our inquiry focuses on whether the Initiative exercises the people's legislative power, or instead is merely an administrative action that lies solely within the City's domain.

¶17 The City and the court of appeals' decision rely on *Wennerstrom* to conclude that the Initiative is administrative rather than legislative. There, the Court considered whether the City's actions that local citizens proposed to refer to the ballot were legislative or administrative. *Wennerstrom*, 169 Ariz. at 488. The actions at issue were a City ordinance conceptually approving street widening and approving a project for which the voters had authorized funds. *Id.* at 486–87. The Court concluded the conceptual approval was not legislative because "the Council had not yet finally *decided to act*." *Id.* at 490 (emphasis in original). The second was administrative in nature because it "merely carries out the purpose declared by a prior legislative act," specifically the voter authorization of bonds that had "declared a public purpose (road improvement and construction) and provided the ways and means for its accomplishment." *Id.* at 490–91.

¶18 The City here argues that the Initiative is likewise administrative because the City has already created the public policy (the Project), the Initiative proposes only a limited alteration and therefore does not create new general policy, and City engineers are responsible for carrying out the overall project.

**¶19**          The City overreads *Wennerstrom* and its applicability to this case.  First, the three-part test distilled from *Wennerstrom* is not dispositive.[3] Like many tests courts use to determine constitutional compliance, this test is a means to determine constitutionality rather than an end in itself. *Wennerstrom* recognized the rule that "an act that declares a public purpose and provides for the ways and means of its accomplishment is legislative." 169 Ariz. at 489 (citing *Pioneer Tr. Co. v. Pima County*, 168 Ariz. 61, 65 (1991)). An act is "administrative," by contrast, if "it merely pursues a plan already adopted by the legislative body itself, or some power superior to it."  *Id.* at 489 (quoting 5 E. McQuillin, *The Law of Municipal Corporations* § 16.55 (3d. rev. ed. 1989)).   The factors the Court applied in *Wennerstrom* helped determine whether the City's actions that were the subject of the referendum were legislative or administrative.

**¶20**          Significantly, *Wennerstrom* construed a proposed referendum, not an initiative.  Although the same general rule applies in both contexts, with a proposed referendum the court must determine whether the predicate government action was legislative or administrative, which resolves whether it can be referred to the ballot; whereas with an initiative the question is whether the voters are proposing a legislative or administrative act.

**¶21**          Though those inquiries sound similar, there are marked differences.  In the referendum context, the nature of the government's predicate action is *dispositive* of whether the matter can be referred; in the initiative context, the government's actions are *irrelevant* to whether the matter can be initiated.  So long as the matter qualifies as legislative, it can be the subject of an initiative.  And given that the citizens' legislative power is coextensive with their elected representatives', the power to initiate legislation is necessarily equally broad.

**¶22**          Thus, the *Wennerstrom* factors, although helpful, are not readily adaptable to the initiative context.  Instead, to determine whether an initiative is legislative in nature, the proper focus is on the initiative's context.  It does not matter whether the purpose of the initiative is to

---

[3]   We say "distilled from" because the three-part test attributed to *Wennerstrom* by the court of appeals, *Roundtree*, 2024 WL 3273984, at *3 ¶ 13, and elsewhere, *see, e.g.*, *Redelsperger v. City of Avondale*, 207 Ariz. 430, 433 ¶ 15 (App. 2004), does not appear as an express three-part test in *Wennerstrom*.

supplant or revoke a policy. For instance, it does not matter whether the City adopted a policy and assigned its implementation to city engineers. Indeed, the City may not through its own actions thwart the citizens' right to initiate legislation, for the citizens are free, as is the City, to change its policy. *See Cave Creek Unified Sch. Dist. v. Ducey*, 233 Ariz. 1, 6 ¶ 16 (2013) (stating that "one legislature may not enact a statute that irrevocably binds successor legislatures"). The sole determinant of compliance with section 1(8) is whether the initiative proposes legislation.

**¶23** An example might help. Suppose a city hires a manager and certain voters object. An initiative that fires the city manager would be administrative in nature, as it does not set policy and the means of implementation. But an initiative setting the terms and qualifications for the city manager would be legislative in nature, regardless of what policies the City previously had adopted, and therefore, properly subject to initiative. *See, e.g.*, *Williams v. Parrack*, 83 Ariz. 227, 231 (1957) (holding that a proposed initiative setting fire department job classifications and salaries, and repealing prior ordinances, "clearly . . . is legislative").

**¶24** Other opinions from this Court recognize this line of demarcation. In *Saggio v. Connelly*, 147 Ariz. 240, 240 (1985), voters demanded that an election be held to disincorporate the City of Apache Junction. The Court examined the proposed initiative to "determine whether it is, in fact, legislation." *Id.* at 241. "Legislation, whether by the people or the legislature, is a definite, specific act or resolution." *Id.* The demand for an election did not constitute legislation, the Court held, because "[i]t does not enact anything." *Id.*

**¶25** Applying *Saggio*, the Court ruled in *Fritz v. City of Kingman*, 191 Ariz. 432, 434–35 ¶¶ 15–16 (1998), that re-zoning decisions that implement the city's general plan, though "use-specific decisions," were legislative rather than administrative in nature and thus subject to referendum. A general plan, the Court explained, "need not provide the ways and means of its own accomplishment and thus is not a self-executing document," but instead requires subsequent actions for its effectuation. *Id.* at 434 ¶ 15. Such actions create a new rule and therefore are legislative. *See id.* at 435 ¶ 19.

## C.

**¶26** Thus, the question presents: does the Initiative propose a law? Unquestionably, it does.

**¶27** The Initiative expressly creates public policy—preserving Lake Powell Boulevard as it existed on October 1, 2023; and the means of accomplishing that policy—preventing the use of public funds to narrow the specified portion of the road. The fact that this reflects a *change* in public policy does not alter its legislative character. Nor is it administrative in nature, for like all legislation, it *controls* administrative implementation. *See Roberts v. State*, 253 Ariz. 259, 270 ¶ 43 (2022) ("The legislature must first make the policy choice, then it may delegate to [the executive branch] the power to implement it.").

**¶28** The Council's ability to delegate its authority over the streets to the engineer flows from its statutory empowerment to "exercise exclusive control over the streets, alleys, avenues and sidewalks of the town." § 9-240(B)(3)(a). But that doesn't mean the Council has surrendered its ability to legislate in this area. For example, the Page Code of Ordinances delegates substantial authority to the Police Chief to regulate traffic. *See* Page, Ariz. Code ch. 71, §§ 71.01 to 71.07. But § 71.15 prohibits "[p]arking, loading or unloading passengers in or along the entry road to Horseshoe Bend, also known as Page Parkway" and "[l]oading or unloading passengers in or along U.S. Highway 89 within 1,500 feet of the intersection of Page Parkway and U.S. Highway 89." Similarly, here, the Council could delegate authority to the engineer and then pass an ordinance setting policy for a specific area, which simply means that the engineer must carry out projects in that area consistent with the ordinance.

**¶29** Just as this Court's decision in *Fritz* referred to a single re-zoning decision as a legislative action because it permanently changed the previously applicable rule, the fact that this Initiative is use-specific and narrow in scope does not alter its legislative character. No further legislative action is necessary to effectuate it. Unless legislatively displaced at some future time, it is a forever limitation on the use of public funds to narrow Lake Powell Boulevard.[4]

---

[4] Any challenge to the substance of the proposed enactment must be made only after the initiative passes. *See, e.g., League of Ariz. Cities & Towns*, 213 Ariz. at 559–60 ¶ 10.

¶30        The proposed Initiative falls within the legislative authority of the qualified electors, and therefore the measure may proceed to the ballot.

**CONCLUSION**

¶31        We grant the Committee's request for attorney fees pursuant to A.R.S. § 12-348(A)(4).

¶32        The decision of the court of appeals is vacated.  The decision of the trial court is reversed, and we remand to the trial court to enter appropriate relief for the Committee.